GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 10th Floor
New York, New York 10004
Catherine Anderson
(212) 847-8315
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

Robert Mallin,

        Plaintiff,                                    Case No.

v.

                                                **COMPLAINT**

Retail Worx LLC,

                                                JURY TRIAL DEMANDED

        Defendant.
------------------------------------------------------------------------X

      1.      Plaintiff Robert Mallin, by and through his undersigned counsel, brings this action for discrimination in employment on the basis of sex and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C. §§ 2000e, *et seq.*, discrimination in employment on the basis of sex, gender, and familial status in violation of the New York State Human Rights Law, the New York Executive Law §§ 290 and 296 ("NYSHRL"), and discrimination in employment on the basis of sex, gender, and caregiver/familial status under the New York City Human Rights Law, N.Y. City Adm. Code § 8-101 *et seq.* ("NYCHRL") (hereinafter collectively referred to as the "anti-discrimination laws") against his former employer, Defendant Retail Worx, LLC, also known as "Flagship."

1

## THE PARTIES

2. Mr. Mallin is a 49-year-old man and new father. He resides in Brooklyn, New York.

3. Defendant Retail Worx, LLC ("RWX"), also known as "Flagship," is an investment holding and management company incorporated in Delaware with its headquarters located at 399 Lafayette Street, 2nd Floor, New York, New York 10003, and additional offices at 676 Broadway, New York, New York 10012. RWX is a multi-concept group which focuses on brand development and retail growth, primarily with food and health brands, including restaurant concepts such as Omakasa and TacoDumbo.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 42 U.S.C. §§ 2000e, *et seq*., and 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because the majority of unlawful acts complained of occurred in, and the records relevant to such practices are maintained in, this District where the Defendant resides.

## STATEMENT OF FACTS

7. In August 2018, Mr. Mallin commenced work as a Regional General Manager at RWX. Mr. Mallin's role as the Regional General Manager at Retail Worx was a multifaceted, complicated role which required Mr. Mallin to oversee multiple locations of Taco Dumbo and Omakasa, which are fast casual restaurants.

8. As the Regional General Manager, Mr. Mallin was responsible for the day-to-day operations for multiple restaurants (referred to by RWX as "stores") and provided the leadership, direction, and support to stores' management-level employees as was necessary to consistently exceed customer expectations through the service of high-quality hospitality, food, beverages, and convenience products in a clean, comfortable, and exciting environment while achieving sales and profit objectives.

9. Mr. Mallin's responsibilities as Regional General Manager were extensive and included the following:

- Developing a cohesive team of managers, store associates, chefs, and line employees in each of his/her stores within their region, and having them embrace the Mission, Vision, Core Values, and Culture of Retail Worx while working together towards achieving the common goals of the organization.

- Ensure that appropriate, budgeted staffing levels (management & hourly) of stores are achieved and maintained.

- Participate with People & Culture in the recruiting and hiring of high-quality employees (both salaried & hourly) and ensuring that each employee goes through the Induction session and completes the Spiritually Certified training.

- Ensure pre-shift meetings, departmental meetings, weekly manager meetings, and one-on-one coaching sessions are utilized as necessary to move operation to the next level and continuously improve the operation.

- Ensure that performance reviews of all hourly employees are completed yearly.

- Assist People & Culture in ensuring that each store's employee files are complete, including thorough, signed documentation for all disciplinary incidents.

- Ensure thorough documentation of all incidents, including counseling sessions, accidents/injuries with regards to workers' compensation, and termination reports. Continually assess the status of current management teams, developing action plans to address the developmental issues of each team member, and following through on the progress of each manager and kitchen employee.

- Coach, mentor, and develop the management team as well as key hourly employees to ensure long-term viability and success of each store in the company.

10. In addition, as the Regional General Manager, Mr. Mallin was responsible for Product Quality of Operations, including:

- Ensuring that each store is operating at or above standards.

- Working closely with store management teams to ensure the quality of all aspects of the stores, including Beverage Service, Food Production, Timely Service Execution, and Physical Plant structure, and the following responsibilities:

    o Regular meetings with the kitchen team regarding proper handling procedures of all products, including freshness of the product.

    o Ensuring a safe and clean environment is the norm and all products and equipment are being handled properly.

    o Regular review of online and live guest feedback along with staff feedback regarding food, beverage, and hospitality.

- Maintaining Department of Health standards at all times and performing a timely review, following up, and establishing action plans as needed for:
    - Sanitation Shop Scores
    - Health Department Inspections
    - Food & Service Quality Shop Scores

11. Mr. Mallin was also required to possess extensive technical knowledge of all operating systems and products, including:

- Possessing a working knowledge of the systems and platforms used within RWX, including proficiency in the following:
    - Opening and closing procedures including the:
        - Ability to effectively run a shift, including bar functions (during any meal period, any day of the week);
        - Knowledge of appropriate music and lighting levels in the stores;
        - Knowledge and oversight of all security procedures and programs; and
        - Knowledge of HVAC systems and any inherent issue;
    - All necessary accounting procedures and administrative paperwork procedures:
        - Revenue;
        - A/P; and
        - Payroll & Cash handling if applicable.
- Full and complete knowledge of the store concept, vision statement, core values, hospitality guide, and employee policy manual.

- Complete product knowledge.

- Knowledge of scheduling platform and any other future platforms that are implemented within the operation.

12. Mr. Mallin also was required as the Regional General Manager to develop and promote the stores, and to contribute financially to RWX's growth and bottom line, by engaging in the following activities:

- Working with the management teams to increase guest counts, daily sales, and operational profitability, and helping develop a loyal guest following;

- Monitoring and working with the managers to ensure the execution of the annually established marketing plans for all stores;

- Demonstrating a strong performance with respect to managing the financial health of the business;

- Possessing knowledge of actual trends in covers, check averages, menu mix, and demand by meal periods, in real time; and

- Ensuring that stores meet and exceed budgeted financial goals, including the following responsibilities:

  o Working with the General Manager & Kitchen Manager to develop each store's annual budget for review by the Executive Team;

  o Monitoring and maintaining all cost control centers; further development of cost savings programs and strong follow through on all systems;

- o   Monitoring trends in all areas from sales, to costs, cover counts, etc. and proactively reporting on such to the Executive Team;

- o   Working side by side with management teams to manage labor in real time, by meal periods and days of the week;

- o   Analyzing weekly flash reports and monthly Profit and Loss statements, developing accurate plans from them, implementing them, and following through on plans; and

- o   Ensuring there is keen oversight in place for all aspects of purchasing, storage, and inventory within each store.

13. Mr. Mallin's work at RWX as a Regional General Manager was highly regarded. On March 29, 2019, he received a strong and overall very favorable annual performance review. In this review, Mr. Mallin obtained "exceeds" or "meets" job evaluation performance standards in 10 out of a total of 12 criteria. At or around this time, he also received a 5% raise of $5,000.00. The Chief Operating Officer of RWX, Christian Palikuca, to whom Mr. Mallin reported directly, told Mr. Mallin that he was the only employee at RWX receiving a raise, that his review was the best review that Mr. Palikuca was delivering, and that, in sum and substance, he really deserved a larger raise. Mr. Palikuca told Mr. Mallin that his 5% raise was being made in "good faith" to retain Mr. Mallin, and that he should not worry because he would be taken care of financially by RWX for his good work.

14. On or around May 10, 2019, Mr. Mallin informed RWX that he and his partner were pregnant and that he was anticipating becoming a new father in the Fall 2019. At this time, Mr. Mallin's colleague, Sara Unal, who held the role as Assistant to the Chief Operating Officer

and Founder, Jon Kreiger, told Mr. Mallin that he had just "shot himself in the foot" by notifying RWX that he was going to become a new father because RWX was not a family friendly place to work.

15.     Approximately ten days later, on May 20, 2019, Mr. Mallin met with Rainlove Lampariello, the Director of Operations at RWX.  During this meeting, Mr. Lampariello suggested that Mr. Mallin move to an office role because both Mr. Lampariello and Mr. Palikuca thought it would be a better fit with Mr. Mallin's new "life change" and would give Mr. Palikuca support in the office.

16.     On May 21, 2019, Mr. Mallin met with Mr. Palikuca and Mr. Lampariello.  They informed Mr. Mallin that they had hired someone else to perform his job as Regional General Manager and that Mr. Mallin would be moving to an office role once the new Regional General Manager was up to speed.  Mr. Mallin was not provided a job description for the office position, nor could Mr. Palikuca clearly articulate his new role and responsibilities.  Mr. Mallin understood that his change in position at RWX was due to his recent announcement that he and his partner were expecting a baby.  There was no other reason for this sudden and unfavorable change in his job position.  Mr. Mallin understood the new role to be a demotion.

17.     On May 24, 2020, after Mr. Mallin had not shown excitement for the new office role and viewed it as a demotion from his position as Reginal General Manager, Mr. Mallin was called back to meet with Mr. Palikuca and Mr. Lampariello.  During this meeting, Mr. Palikuca stated the Corporate Operations Manager role was a better fit for Mr. Mallin's new life change.  Mr. Palikuca told Mr. Mallin that he had better get excited about the new role or he would not have a job.

18.     On May 31, 2020, Mr. Mallin had a telephone call with Mr. Lampariello in which Mr. Mallin stated that the job as Corporate Operations Manager was a demotion and that it was just thrown together with no thought.  Mr. Mallin stated that he had not received a job description, which showed how little regard Mr. Lampariello and Mr. Palikuca had for the new role.

19.     On June 2, 2019, Mr. Lampariello sent Mr. Mallin an email with a job description for the position of Corporate Operations Manager.  The role of Corporate Operations Manager, as defined from the job description, had little to no guest contact, no direct reports, and no direct impact financially on RWX's bottom line.  The role was heavily administrative and task focused.  The Corporate Operations Manager position clearly was a junior role better suited for someone early in their career and was not well suited for a tenured manager in the restaurant industry, such as Mr. Mallin, who recently had received a very strong performance review.

20.     Within that same hour on June 2, 2019, Mr. Lampariello sent a welcome email for Mr. Mallin's replacement as Regional General Manager.

21.     Mr. Mallin's reassignment and *de facto* demotion occurred within months of his having received a very favorable annual review and a raise for his work as Regional General Manager and swiftly followed his announcement that he soon would be a new father.  Mr. Mallin's reassignment came with little warning or valid reason, other than the fact that he was expecting a child with his partner.  Both Mr. Palikuca and Mr. Lampariello had emphasized that Mr. Mallin's new position as Corporate Operations Manager would be a "better fit" for his "life-change" when the baby arrived.  In essence, Mr. Mallin was removed as Regional General Manager, a position at which he had excelled, and demoted to a less prestigious and highly

9

administrative position for which he had fewer qualifications.  The position of Corporate Operations Manager provided less upside and fewer opportunities for career advancement.  Mr. Mallin was thus being demoted to a less significant role within the organization.  The demotion was based entirely on Mr. Mallin's sex and parental status.

22. On or around June 2, 2019, RWX hired a replacement, Warren Krieg, who essentially took over Mr. Mallin's former role as Regional General Manager, a position in which Mr. Mallin previously had performed very well.  Although Mr. Mallin was disappointed and confused by his *de facto* demotion, he continued to work diligently at RWX in his new position.

23. On October 5, 2019, Mr. Mallin's child was born (two weeks prior to the due date), and Mr. Mallin commenced parental leave, which RWX had granted him in advance of the birth.  When Mr. Mallin sent notice of his son's birth, there was no response from RWX.

24. Mr. Mallin had agreed to respond to emails and work remotely as may be required during his parental leave.  Mr. Mallin started to notice during his parental leave that he was being removed from conversations that he should have been part of at RWX.  Indeed, it was becoming clear to Mr. Mallin that RWX was using his absence during parental leave as another opportunity to push him out by taking away more of his work responsibilities.

25. On or around October 21, 2019, Mr. Mallin informed RWX that he would return to work on October 28, 2019.  On October 28, 2019, RWX terminated Mr. Mallin without cause.  Mr. Mallin's termination was pre-textual and designed to conceal that he was actually terminated because of his sex and parental/caretaker status.

26. Mr. Mallin has fulfilled his duty to mitigate damages and has obtained a new employment position, which pays materially less than his former position with RWX. As a result of RWX's actions, Mr. Mallin has suffered, and continues to suffer, damages.

27. On February 4, 2020, Mr. Mallin filed a timely charge with the Equal Employment Opportunity Commission ("EEOC").

28. At Mr. Mallin's request, the EEOC issued a Notice of Right to Sue, which he received on March 26, 2021. A copy is attached hereto as Exhibit A. This action has been timely commenced within ninety (90) days of the EEOC's issuance of the Notice of Right to Sue.

## FIRST CAUSE OF ACTION
(Gender and Sex Discrimination in Violation of 42 U.S.C. § 2000e)

29. Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

30. Defendant discriminated against Plaintiff in the terms and conditions of his employment based on his sex and gender in violation of 42 U.S.C. §2000e.

## SECOND CAUSE OF ACTION
(Gender, Sex and Familial Status Discrimination in Violation of NYSHRL)

31. Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

32. Defendant discriminated against Plaintiff in the terms and conditions of his employment based on his gender and sex and familial status in violation of NYSHRL, the New York Executive Law §§ 290 and 296.

## THIRD CAUSE OF ACTION
(Gender, Sex, and Caregiver/Familial Status Discrimination in Violation of NYCHRL)

33. Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

34. Defendant discriminated and retaliated against Plaintiff in the terms and conditions of his employment based on his gender and sex and caregiver/familial status in violation of NYCHRL.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues as of right by jury.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. Awarding Plaintiff lost wages and compensatory damages, including damages for emotional distress;

B. Awarding Plaintiff punitive damages in an amount to be determined at trial;

C. Awarding Plaintiff all costs of this action and reasonable attorney's fees; and

D. Granting Plaintiff such other relief as the Court deems appropriate and equitable, including injunctive and declaratory relief as may be required in the interest of justice.

Dated: April 28, 2021
New York, New York

                                        **GISKAN SOLOTAROFF
                                            &amp; ANDERSON LLP**

*/s/ Catherine E. Anderson*
_____
Catherine E. Anderson, Esq.
Email: canderson@gslawny.com
90 Broad Street, 10th Floor
New York, NY 10004
Tel: (212) 847-8315